UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GREENBURGH SHOPPING CENTER ASSOCIATES,
LLC,

                               **COMPLAINT**

          Plaintiff,

      - against -

YOUN DO HWANG individually, d/b/a "DEBRICH
CLEANERS",

              Defendants.
------------------------------------------------------------------------X

     Greenburgh Shopping Center Associates, LLC ("Plaintiff"), as and for its Complaint

against defendant Youn Do Hwang d/b/a "Debrich Cleaners" ("Tenant"), alleges as follows:

### The Nature of the Action

     1.     This is an action for:  (1) strict liability pursuant to 42 U.S.C. §§ 9607(a), 9613, *et*

*seq.* ("CERCLA") based on Tenant's spill of perchloroethylene, also known as

tetrachloroethylene ("Perc"), on December 1, 2020 at the dry cleaning premises leased by Tenant

from Plaintiff, and Tenant's failure to indemnify Plaintiff for Plaintiff's necessary remediation

expenses, attorneys' fees and associated costs incurred, and continuing to be incurred, as a result

of Tenant's spills; (2) a declaratory judgment pursuant to CERCLA holding that Tenant is

responsible for all cleanup and remediation expenses going forward at the Premises and at the

Shopping Center where the Premises are located and liable to Plaintiff for all future remediation

costs incurred by Plaintiff; (3) breach of contract, by which Plaintiff seeks recovery from Tenant

for damages resulting from Tenant's failure to maintain the dry cleaning premises in proper

condition as required by Tenant's Lease; (4) breach of contract for Tenant's failure to procure and

maintain general liability insurance naming Plaintiff as an additional insured as required by the Lease between Plaintiff and Tenant, (5) negligence in causing the Perc spills; (6) private nuisance caused by the Perc spills and (7) breach of contract based on Tenant's failure to pay base rent and additional rent for the Premises.

## The Parties

2.      Plaintiff is a New York State limited liability company having a principal place of business in Westchester County.

3.      At all relevant times, Plaintiff is, and was, the owner of the shopping center located at 77–103 Knollwood Road, White Plains, New York 10607 ("the Shopping Center").

4.      At all relevant times, Tenant was doing business under the name "Debrich Cleaners" at 91 Knollwood Road, White Plains, New York, within the Shopping Center.

5.      At all relevant times, Tenant was, and still is, a resident of the County of Rockland, State of New York.

## Subject Matter Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over Plaintiff's first and second causes of action herein pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction) and pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). §§ 107 and 113(b) (42 U.S.C. §§ 9607 and 9613(b)).

7.      This Court has supplemental jurisdiction over Plaintiff's state law causes of action pursuant to 28 U.S.C. § 1367 since these causes of action arise from the same nucleus of facts as

Plaintiff's CERCLA claim; to wit, Tenant's Perc spills and tenant's breach of the terms of its Lease.

8.      Venue is proper in this District Court pursuant to CERCLA §§ 107 and 113(b) (42 U.S.C. Chapter 103, §§ 9607 and 9613(b)) because Tenant's spill occurred in the Southern District of New York, and pursuant to 28 U.S.C. § 1391 because the real property which is the subject of this action is located, and the events giving rise to the claims herein occurred, in the Southern District of New York.

9.      In addition, the Declaratory Judgments Act (28 U.S.C. § 2201) authorizes this Court to grant declaratory relief.

## The Lease

10.      At all relevant times, Plaintiff was, and still is, the owner of commercial premises located at 91 Knollwood Road, White Plains, New York ("the Premises").

11.      On November 12, 1991 Plaintiff entered into an agreement in writing (the "Lease") with Tenant's predecessor-in-interest, Debrich Cleaners, Inc., by the terms of which Debrich Cleaners, Inc. leased from Plaintiff for commercial purposes the Premises described and designated as "the store known as 91 Knollwood Road, White Plains, New York" within the Shopping Center. (Ex. "A", Pg. 1)

12.      The term of the Lease was from September 1, 1991 through August 31, 2001. (Ex. "A", Pg. 1)

13.      Pursuant to the Lease, Debrich Cleaners, Inc. was permitted to use the Premises "for the operation of a retail dry cleaning establishment, including the cleaning, pressing and laundering of clothing and shirts, and the rental of tuxedos". (Ex. "A", Pg. 1, § 2)

14.     Pursuant to § 59 of the Rider to the Lease, Debrich Cleaners, Inc. covenanted that:

Tenant shall, at its own cost and expense, promptly dispose of all… waste in the demised premises arising from the conduct of its business or otherwise. Tenant will conduct its business at the demised premises so as to avoid obnoxious or offensive smells or odors emanating therefrom…

15.     Pursuant to § 4 of the Lease, Debrich Cleaners, Inc. also covenanted that:

Tenant shall, throughout the term of this lease, take good care of the demised premises and the fixtures and appurtenances therein… and at its sole cost and expense, make all non-structural repairs thereto as and when needed to preserve them in working order and condition…

(Ex. "A", Pg. 1, § 4)

16.      Pursuant to § 54 of the Rider to the Lease, Debrich Cleaners, Inc. also covenanted that:

Tenant… shall bear the cost and expense of any and all non-structural maintenance, repairs and/or replacements to the demised premises.

17.     Pursuant to § 58 of the Rider to the Lease, Debrich Cleaners, Inc. also "covenant[ed] and agree[d] to maintain the demised premises in a condition of proper cleanliness, orderliness and state of attractive appearance."

18.     Pursuant to § 51 of the Rider to the Lease, Debrich Cleaners, Inc. also covenanted that:

Tenant hereby assumes liability for, and agrees to indemnify, save and hold harmless the Owner from and against… any and all liability, loss and expenses arising from… damage to property (including, but not limited to, the property of the Owner) caused in whole or in part by the acts or omissions of the Tenant, its agents, servants, employees, sub-contractors, licensees or invitees, or occurring by reason of or in connection with, the use or operation of the demised premises or any of the appurtenances, facilities or equipment used in connection therewith… by anyone including the public, the Tenant, the Tenant's agents, servants employees, sub-contractors, licensees or invitees, whether or not due to any act or omission of the Tenant, its agents, servants, employees, sub-contractors, licensees or invitees while in on or about the demised premises or while acting in the course of or in the scope of their employment, it being the intent of the provisions of this

4

article that the Tenant shall assume all the risk of liability for, and indemnify the Owner against, all such… liabilities arising out of or in any manner, directly or indirectly, connected with the conduct of the Tenant's business and/or the use and/or occupancy of the demised premises.

19.     Pursuant to § 8 of the Lease, Debrich Cleaners, Inc. also covenanted that:

Tenant agrees, at Tenant's sole cost and expense, to maintain general public liability insurance in standard for in favor of Owner and Tenant against claims for bodily injury or death or property damage occurring in or upon the demises premises, effective from the date Tenant enters into possession and during the term of this lease. Such insurance shall be in an amount and with carriers acceptable to the Owner, Such policy or policies shall be delivered to the Owner.

(Ex. "A", Pg. 2, § 8)

20.     Pursuant to § 52 of the Rider to the Lease, Debrich Cleaners, Inc. also covenanted that:

Upon execution of this agreement Tenant shall, at its sole cost and expense, furnish and deliver to the Owner public liability and property damage insurance policy or certificates thereof issued by an insurance company registered to do business in the State of New York insuring the Owner as a named additional insured and Tenant against any and all liability on account of… damage to property resulting from or occurring by reason of, or in connection with, the conduct of the Tenant's business or of any right or privilege granted by this agreement to the Tenant, such policy to include insurance of the Tenant against loss or liability resulting from, or on account of, its contractual liability under this agreement. Said policy shall have limits of not less than… $500,000 in the case of property damage….

Not less than thirty (30} days prior to the expiration dates of expiring policies theretofore furnished to the Owner by the Tenant pursuant to this Article, renewal policies or certificates thereof together with evidence of payment of premiums therefore shall be delivered by the Tenant to the owner…

21.     Pursuant to § 8 the Lease, Debrich Cleaners, Inc. also covenanted that:

Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall not be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by tenant, Tenant's agent, contractors, employees, invitees, or licensees.

(Ex. "A", Pg. 2)

22.     Pursuant to § 19 of the Lease, Debrich Cleaners, Inc. also covenanted that:

If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder, and if Owner, in connection therewith… makes any expenditures or incurs any obligations for the payment of money, including but not limited to attorney's fees, in instituting, prosecuting or defending any actions or proceeding, such sums so paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and… if Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner as damages.

## Assignment of Lease to Tenant and Amendments to Lease

23.     On March 10, 1992, Debrich Cleaners, Inc., with Plaintiff's consent, assigned its interest in the Lease and the Premises to Tenant, who, despite being unincorporated, continued to do business at the Premises as Debrich Cleaners. ("Ex. B")

24.     On June 27, 2001, the former tenant, Debrich Cleaners, Inc., was dissolved by proclamation.

25.     On September 14, 2001, Plaintiff entered into an agreement in writing with Tenant ("the First Lease Amendment") pursuant to which the term of the Lease was extended through August 31, 2011, the base rent was modified, and the terms of the Lease were otherwise unchanged. (Ex. "C")

26.     On July 18, 2011, Plaintiff entered into an agreement in writing with Tenant ("the Second Lease Amendment") pursuant to which the term of the Lease was extended through August 31, 2021, the base rent and real estate tax escalation provisions were modified, and the terms of the Lease were otherwise unchanged. (Ex. "D")

6

**Tenant's Failure to Procure and Maintain Insurance**

27.     Upon information and belief, Tenant failed to procure general liability insurance for the Premises between May 9, 2013 and November 18, 2019.

28.     Upon information and belief, Tenant procured general liability insurance with Wesco Insurance Company ("Tenant's Insurance Policy") on or about November 19, 2019, listing Plaintiff as a certificate holder.

29.     However, Tenant failed to make the premium payments due for Tenant's Insurance Policy.

30.     As a result, on February 20, 2020, Wesco Insurance Company terminated Tenant's Insurance Policy.

31.     Tenant failed to notify Plaintiff of the termination of Tenant's Wesco Insurance Company policy.

32.     Following Wesco Insurance Company's termination of Tenant's Insurance Policy, Tenant failed to procure replacement insurance coverage for the remainder of its tenancy at the Premises.

33.     Tenant failed to provide Plaintiff with certificates of liability insurance for the period February 21, 2020 through August 31, 2021.

**Tenant's Operations and the Perc Spills**

34.     In the course and scope of Tenant's dry cleaning business, Tenant used Perc.

35.     Perc is a chemical commonly used and disposed of in the dry cleaning industry.

36.     Perc is considered a hazardous substance for purposes of CERCLA.

7

37.     On or about December 1, 2020, Tenant was in the process of closing its business operations and removing its property from the Premises.

38.     Unbeknownst to Plaintiff, Tenant retained the services of a contractor known as "Marcelo" and doing business as "N.Y.C. Scrap Metal Pickup" ("Tenant's Contractor") to assist with the removal of Tenant's property from the Premises.

39.     Upon information and belief, Tenant's Contractor was unincorporated, unregistered, unlicensed and uninsured.

40.     On or about December 1, 2020, as a result of Tenant's negligence and the negligence of Tenant's Contractor, Perc was spilled within the Premises ("Tenant's December 2020 Perc Spill").

41.     The Perc spilled by Tenant and Tenant's Contractor seeped below the floor of the Premises and into the soil below the Premises.

### Plaintiff's Necessary Remediation Efforts and Clean-Up Expenses

42.     Upon discovery of Tenant's December 2020 Perc Spill, Plaintiff immediately began its remedial response and clean-up measures, including evacuating the Premises, retaining the services of environmental specialist Richard Izzo, of CA Rich Consultants ("CA Rich"), to evaluate the extent of the chemical exposure, summoning a hazardous materials response team, Emergi-Clean, Inc. ("Emergi-Clean") and notifying the Fairview Fire Department, who, in turn, notified the Greenburgh Police Department.

43.     CA Rich took measurements of the Perc present in the indoor air and sub-slab soil at the Premises and determined that amount of Perc required mitigation under the New York State Department of Health guidelines.

8

44.     Thereafter, Plaintiff retained CA Rich to continue the cleanup process at the Premises and the Shopping Center, including "provid[ing] oversight of the cleanup, perimeter air and dust monitoring during the cleanup, collection of the waste manifests, documentation of the cleanup, liaison with the Building Department…" and, "following the cleanup… perform[ing] sub-slab soil and vapor testing in the spill area and indoor air testing in the former dry-cleaner space… as well as one background exterior air sample."

45.     In January 2021, Plaintiff continued to utilize the services of Emergi-Clean for biohazard remediation, including removal of contaminated vinyl flooring tiles, removal of contaminated soil, power washing the floor, removal of the contaminated wash water, use of a high efficiency particulate vacuum, and use of a negative air fan/air scrubber.

46.     In January 2021 CA Rich also provided cleanup oversight services, including soil borings, laboratory analysis, geophysical tracing, coordination with Emergi-Clean, data analysis, project management and administration, and retention of AARCO Environmental Services and Republic Environmental Systems, LLC to transport and dispose of contaminated subsoil.

47.     Throughout February and March 2021, CA Rich continued to provide Plaintiff with remediation services including vapor intrusion testing, vacuum pit and vacuum monitoring installation and communication testing, laboratory analysis of air samples, pilot testing of a vacuum system, data analysis and project management such as coordination with Plaintiff and the Department of Environmental Conservation.

48.     Thereafter, from April 2021 through July 2021, CA Rich analyzed the data from their vapor intrusion testing and pilot test and used said data to design a system to provide further vacuum suction and remediation measures, including placement of sub-slab depressurization

suction pits, vacuum monitoring points, risers and a system shed, mapping out a pathway for the sub-slab depressurization system at the Premises and the Shopping Center, and field work to confirm the location for a treatment shed and chimney. CA Rich also utilized the services of a contractor to inspect Tenant's floor for the purpose of providing an epoxy sealant on top of the existing slab.

49.   Plaintiff's costs incurred thus far in connection with its remediation of Tenant's December 2020 Perc Spill is $96,011.36.

50.   The current estimate of the cost of the work to be done for future remediation of Tenant's December 2020 Perc Spill is $105,000.

51.   Although Plaintiff filed a claim with Tenant's insurer in connection with Tenant's December 2020 Perc Spill, , Tenant's insurer denied coverage because Tenant's insurance policy had been terminated due to Tenant's failure to pay its insurance premiums.

52.   As additional reasons for its denial of coverage during the period that the insurance policy was in effect, Wesco also cited a pollution exclusion in Tenant's policy and a lack of coverage for property damage to the Premises.

53.   Plaintiff has not been reimbursed through any insurance for the damages and remediation expenses arising from Tenant's December 2020 Perc Spill , and Plaintiff has paid, and will continue to pay, all such damages and expenses itself.

54.   On December 13, 2021, Plaintiff send Tenant a demand in writing for payment of Plaintiff's remediation costs and for Tenant to assume the costs of all remediation at the Premises and Shopping Center going forward.

55.     Tenant has not paid for any of Plaintiff's damages or remediation expenses arising from Tenant's December 2020 Perc Spill .

### Plaintiff's Loss of Rent Due to Inability to Re-Let the Premises

56.     As a result of Tenant's December 2020 Perc Spill , the Premises have been unrentable since December 2020, including the entire period from the termination of Tenant's lease on August 31, 2021 through the present.

57.     As a result of Tenant's December 2020 Perc Spill , Plaintiff has been unable to obtain a replacement tenant for the Premises.

58.     As a result of Tenant's December 2020 Perc Spill , Plaintiff has sustained a loss of rent in the amount of $21,536 and continuing, covering the four month period from the end of Tenant's Lease term through the present and continuing, at the last rental rate of $5,384 per month.

### Unpaid Rent and Additional Rent

59.     By the terms of the Lease, Tenant covenanted to pay the Base Rent and Additional Rent set forth in §§ 1(b) and 1(c) of the Second Lease Amendment and in §§ 45(a)(3)(b), 69(a)(i) and 69(b) of the Rider to the original Lease.

60.     Pursuant to §§ 69(a)(i) and 69(b) of the Rider to the original Lease, the Additional Rent due from Tenant to Plaintiff included Tenant's share of the operating expenses for the Shopping Center ("Common Area Maintenance" or "CAM").

61.     Pursuant to §§ 45(a)(3)(b), 69(a)(i) and 69(b) of the Rider to the original Lease, the Additional Rent due from Tenant to Plaintiff included Tenant's share of real estate taxes and school taxes for the Shopping Center.

62.     Pursuant to § 69(a)(i) of the Rider to the original Lease, the Additional Rent due from Tenant to Plaintiff included tenant's share of water and sewer expenses from the Shopping Center.

63.     Currently, Tenant is in arrears in the payment of monthly base rent and additional rent totaling $136,516.85, comprised of:

Outstanding Base Monthly Rent ($82,366.04)

(i)      Base monthly rent in the amount of $4,783.00 for the month of September 2016;

(ii)     Base monthly rent in the amount of $4,927.00 for the month of September 2017;

(iii)    Base monthly rent in the amount of $5,075.00 for the month of September 2018;

(iv)     Base monthly rent in the amount of $5,227.00 for the month of September 2019;

(v)      Base monthly rent in the amount of $5,384.00 for the month of September 2020;

(vi)     Base monthly rent in the amount of $3,130.04 for the month of October 2020; and

(vii)    Base monthly rent in the amount of $5,384 per month for the months of November 2020, December 2020, January 2021, February 2021, March 2021, April 2021, May 2021, June 2021,July 2021 and August 2021 (totaling $53,840.00);

Outstanding Additional Rent ($62,150.81)

(viii)    An April 1, 2019 CAM charge of $609.06 for 2018 CAM adjustments;

(ix)    An April 1, 2019 CAM adjustment charge for January 2019 through March 2019 in the amount of $1,011.83;

(x)    A May 1, 2019 charge for Tenant's share of Westchester County and Town of Greenburgh taxes in the amount of $4,752.42;

(xi)    CAM charges of $1,176.09 per month for the months of May 2019, July 2019, August 2019, September 2019, October 2019, November 2019, December 2019, January 2020 and February 2020 (totaling $10,584.81);

(xii)    A September 1, 2019 water and sewer charge of $633.84 for the period March 15, 2019 through June 18, 2019;

(xiii)    An October 1, 2019 school tax charge for the 2019-2020 school year in the amount of $4,999.06;

(xiv)    A March 1, 2020 CAM adjustment charge of $1,400.88 for the year 2019;

(xv)    A March 1, 2020 CAM adjustment charge of $233.48 for January 2020 and February 2020 CAM;

(xvi)    An April 1, 2020 water and sewer charge of $889.10 for the period June 18, 2019 through October 28, 2019;

(xvii)  An April 1, 2020 water and sewer charge of $418.97 for the period October 28, 2019 through January 14, 2020;

(xviii)  CAM charges of $1,292.83 per month for the months of March 2020, April 2020, May 2020, June 2020, July 2020, August 2020, September 2020, October 2020, November 2020, December 2020, January 2021, February 2021, March 2021, April 2021, May 2021, June 2021,July 2021 and August 2021 (totaling $23,270.94);

(xix)  A May 1, 2020 charge for Tenant's share of Westchester County and Town of Greenburgh taxes in the amount of $4,705.15;

(xx)  A September 1, 2020 water and sewer charge of $547.87 for the period January 14, 2020 through July 21, 2020;

(xxi)  School taxes of the 2020-2021 school year in the amount of $4,979.80;

(xxii)  Westchester County and Town of Greenburgh taxes for the period January 2021 through August 2021 in the amount of $3,113.60;

Security Deposit ($8,000.00)

(xxiii)  Minus application of Tenant's security deposit of $8,000.

**Plaintiff's Attorneys' Fees**

64.    In addition to Plaintiff's past and continuing damages and remediation expenses, Plaintiff has and will continue to incur attorney's fees in connection with this action and in connection with Plaintiff's pursuit of insurance coverage and reimbursement of Plaintiff's remediation expenses from Tenant based on Tenant's breach of the terms of the Lease

14

65.     Tenant is liable to Plaintiff for said attorney's fees pursuant to §§ 8 and 19 of the Lease.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Strict Liability Pursuant to CERCLA)

66.     Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

67.     Tenant's dry cleaning business at the Premises is a "facility" as said term is defined by CERCLA at 42 U.S.C. § 9601(9).

68.     At the time of Tenant's December 2020 Perc Spill , Tenant was a person "operating" a facility as said term is defined by 42 U.S.C. § 9601(20)(A)(ii).

69.     Perc is a "hazardous substance" as defined by CERCLA at 42 U.S.C. § 9601(14), 40 C.F.R. § 302.4, § 307(a) of the Clean Water Act, § 112 of the Clean Air Act, and § 3001 of the Resource Conservation and Recovery Act.

70.     Tenant operated a facility at which a hazardous substance – Perc - was disposed.

71.     There was a release of hazardous material at the Premises; specifically the Perc released as a result of Tenant's December 2020 Perc Spill .

72.     Tenant is a "potentially responsible party" as said term is defined for purposes of CERCLA and 40 C.F.R. § 304.12(m).

73.     As a result of Tenant's December 2020 Perc Spill , Plaintiff has incurred necessary response costs as described above, in the amount of $96,011.36 and continuing.

74.     Per the estimate of CA Rich, future remediation costs will be at least $105,000, in addition to the expenses already incurred by Plaintiff.

75.     All response and remediation costs incurred by Plaintiff in connection with Tenant's December 2020 Perc Spill  have been consistent with the National Contingency Plan and are recoverable pursuant to CERCLA § 107(a) (42 U.S.C. § 9607(a)).

76.     Pursuant to CERCLA at 42 U.S.C. § 9607(a), Tenant is strictly liable to Plaintiff for Plaintiff's remediation damages, in the amount of $96,011.36 and continuing.

77.     Pursuant to 42 U.S.C. § 9607(a), the assessment of pre-judgment interest on recoverable amounts under CERCLA is mandatory.

78.     Said pre-judgment interest "accrue[s] from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned."

79.     Plaintiff is entitled to pre-judgment interest, commencing December 13, 2021, on the amounts paid for necessary remediation of the effects of Tenant's December 2020 Perc Spill at the Premises.

80.     Tenant is liable to Plaintiff in the amount of $201,011.36 for the costs of remediation of Tenant's December 2020 Perc Spill.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment Pursuant to CERCLA)

81.     Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

82.     Pursuant to CERCLA § 113(g)(2)(B) (42 U.S.C. § 9613(g)(2)(B)), Plaintiff is entitled to a declaratory judgment holding Tenant strictly liable for all past and future liability for response costs or damages in connection with the remediation of Tenant's December 2020 Perc Spill.

83.     Pursuant to CERCLA § 113(g)(2)(B) (42 U.S.C. § 9613(g)(2)(B)), Plaintiff is entitled to a declaratory judgment declaring that Tenant is responsible for payment of all future costs of remediation at the Premises and Shopping Center in response to Tenant's December 2020 Perc Spill , declaring that Tenant shall immediately assume responsibility for remediation of the effects of Tenant's December 2020 Perc Spill at the Premises and at the Shopping Center, and declaring that Tenant is liable to Plaintiff for all future costs of such remediation incurred by Plaintiff.

84.     Plaintiff lacks an adequate remedy at law in connection with Plaintiff's future damages and expenses in remediating the effects of Tenant's December 2020 Perc Spill.

### AS AND FOR A THIRD CAUSE OF ACTION
#### (Breach of Contract:  Tenant's Failure to
#### Properly Dispose of Waste and Maintain Premises)

85.     Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

86.     Tenant's failure to properly dispose of the Perc used in conducting Tenant's business condition constitutes a breach of the terms of the Lease.

87.     Tenant's failure to take good care of the demised Premises and the fixtures and appurtenances therein constitutes a breach of the terms of the Lease.

88.     As a result of Tenant's breach of the terms of the Lease, including but not limited to Tenant's obligations under §§ 4, 8, 19, 51, 54, 58 and 59, Plaintiff has sustained remediation damages of $96,011.36, will sustain additional remediation damages of at least $105,000 for the work to be performed under CA Rich's remediation proposal, has sustained loss of rent in the amount of at least $21,536 (four months since the expiration of the Lease during which period

the Premises have been unrentable due to the need to remediate Tenant's Perc spills) and will continue sustaining loss of rent of $5,384 per month during the remediation period due to Plaintiff's inability to re-let the Premises.

89.     Tenant is liable to Plaintiff in breach of contract for $222,547.36 and continuing, plus attorney's fees as provided by §§ 8 and 19 of the Lease.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract:  Failure to Procure and Maintain Insurance Coverage)

90.     Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

91.     Tenant's failure to procure insurance coverage for the period of time covering Tenant's December 2020 Perc Spill constitutes a breach of the terms of the Lease.

92.     Tenant's failure to procure insurance coverage for the subject matter of Tenant's December 2020 Perc Spill constitutes a breach of the terms of the Lease.

93.     Tenant's failure to make its premium payments constitutes a breach of the terms of the Lease.

94.     Tenant's failure to keep its general liability coverage in force constitutes a breach of the terms of the Lease.

95.     Tenant's failure to procure replacement insurance coverage following Wesco's termination of Tenant's insurance policy constitutes a breach of the terms of the Lease.

96.     As a result of Tenant's breach of the terms of the Lease, including but not restricted to §§ 8, 19 and 52, Plaintiff has sustained damages of $96,011.36 for the costs and expenses of remediation, which have not been covered by insurance, has sustained damages of

$21,536 in lost rent which has not been covered by insurance, and will sustain additional damages of at least $105,000 for the work to be performed under CA Rich's remediation proposal, which also will not be covered by insurance.

97.     Tenant is liable to Plaintiff in breach of contract for $222,547.36 and continuing, plus attorney's fees pursuant to §§ 8 and 19 of the Lease.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Negligence)

98.     Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

99.     Tenant was negligent in its storage, maintenance, handling and disposal of the Perc that spilled during Tenant's December 2020 Perc Spill , in Plaintiff's vacatur of, and removal of its possessions from, the Premises, and in failing to properly clean up, and remediate the damages caused by, Tenant's December 2020 Perc Spill .

100.     As a result of Tenant's aforesaid negligence, Plaintiff has sustained remediation damages of $96,011.36, will sustain additional remediation damages of at least $105,000 for the work to be performed under CA Rich's remediation proposal, has sustained loss of rent in the amount of at least $21,536 (four months since the expiration of the Lease during which period the Premises have been unrentable due to the need to remediate Tenant's Perc spills) and will continue sustaining loss of rent of $5,384 per month during the remediation period due to Plaintiff's inability to re-let the Premises.

101.     Tenant is liable to Plaintiff for Tenant's negligence in the amount of $222,547.36 and continuing.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Private Nuisance)

102.    Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

103.    Tenant's negligence in allowing Perc to spill within the Premises and failing to properly dispose of the Perc that caused Tenant's December 2020 Perc Spill  has unreasonably interfered with Plaintiff's use and enjoyment of the Premises and the Shopping Center.

104.    Tenant has created a private nuisance at the Premises and at the Shopping Center.

105.    As a result of the private nuisance created by Tenant, Plaintiff has sustained remediation damages of $96,011.36, will sustain additional remediation damages of at least $105,000 for the work to be performed under CA Rich's remediation proposal, has sustained loss of rent in the amount of at least $21,536 (four months since the expiration of the Lease during which period the Premises have been unrentable due to the need to remediate Tenant's Perc spills) and will continue sustaining loss of rent of $5,384 per month during the remediation period due to Plaintiff's inability to re-let the Premises.

106.    Tenant is liable to Plaintiff in private nuisance for $222,547.36 and continuing.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Contract:  Unpaid Rent and Additional Rent)

107.    Plaintiff repeats, reiterates and re-alleges all prior allegations with the same force and effect as if set forth fully herein.

108.    Tenant is liable to Plaintiff in breach of contract for unpaid Base Rent and Additional Rent in the amount of $136,516.85.

**WHEREFORE**, plaintiff Greenburgh Shopping Center Associates, LLC demands judgment:

(a) against Tenant on the first cause of action in the amount of $201,011.36 plus pre-judgment interest, post-judgment interest and the expenses, fees and disbursements of this action;  and

(b) a declaratory judgment holding Tenant responsible for all future liability for response costs or damages at the Premises and the Shopping Center in connection with the remediation of Tenant's December 2020 Perc Spill , and declaring that Tenant is liable to Plaintiff for any future costs of remediation at the Premises and the Shopping Center in connection with the remediation of Tenant's December 2020 Perc Spill ; and

(c) against Tenant on the third cause of action, in the amount of $222,547.36 plus pre-judgment interest, post-judgment interest and the expenses, fees and disbursements of this action;  and

(d) against Tenant on the fourth cause of action in the amount of $222,547.36 plus interest and the expenses, fees and disbursements of this action;  and

(e) against Tenant on the fifth cause of action, in the amount of $222,547.36 plus pre-judgment interest, post-judgment interest and the expenses, fees and disbursements of this action;  and

(f) against Tenant on the sixth cause of action, in the amount of $222,547.36 plus pre-judgment interest, post-judgment interest and the expenses, fees and disbursements of this action;

(g) against Tenant on the seventh cause of action, in the amount of $136,516.85 plus pre-judgment interest, post-judgment interest and the expenses, fees and disbursements of this action;  and

(h)   for such other and further relief as this Court deems just and proper.

Dated:      Elmsford, New York
            December 20, 2021              Yours, etc.,

                                           Saretsky, Katz & Dranoff, L.L.P.
                                           Attorneys for Plaintiff
                                           Greenburgh Shopping Center Associates, LLC

                              By:          _____
                                               Robert B. Weissman (RW0512)

                                           565 Taxter Road, Suite 210
                                           Elmsford, New York 10523
                                           (212) 973-9797