UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GREENBURGH SHOPPING CENTER ASSOCIATES,
LLC,

                                                  Plaintiff,          **DECLARATION OF**
                                                                                          **ROBERT B. WEISSMAN**

   – against –

                                                                                             Docket No.:
YOUN DO HWANG individually, d/b/a "DEBRICH      21-CV-10921 (PMH)
CLEANERS",

                                                  Defendant.
------------------------------------------------------------------------X

      Robert B. Weissman hereby declares under the penalties of perjury and pursuant to 28 U.S.C. §1746 as follows:

      1.    I am a member of Saretsky Katz & Dranoff, L.L.P., attorneys for the plaintiff Greenburgh Shopping Center Associates, LLC ("GSCA"), and I am fully familiar with the facts and circumstances set forth herein. I submit this Declaration in support of GSCA's Order to Show Cause seeking a default judgment against defendant Youn Do Hwang ("Defendant") pursuant to Fed. R. Civ. Pro. 55(b)(2) and District Judge Philip M. Halpern's June 22, 2022 Order.

      2.    This Action seeks: (1) monetary damages for Defendant's spill of perchloroethylene (also known as tetrachloroethylene) ("Perc") at commercial premises ("the Premises") owned by GSCA and located at 91 Knollwood Road, White Plains, New York; and (2) a declaratory judgment holding that Defendant is liable for the past, present and future costs of remediating the Perc spill and that Defendant is responsible for all remediation of the Perc spill going forward.

      3.    Included in support of this motion are the Declarations and exhibits of Thomas Tennyson (the individual who arrived at the Premises in the immediate aftermath of the Perc spill

and reported the spill), Henry Poyker (GSCA's property manager, who coordinated GSCA's remediation of the Perc spill) and Samuel Jemal (a member of GSCA, who has k knowledge of GSCA's remediation expenses and other damages).

4.  Annexed hereto in support of GSCA's application are the following exhibits:

   1   GSCA's Summons and Complaint, filed on December 20, 2021;

   2.  An affidavit of service attesting to service of the Summons and Complaint on Defendant on January 15, 2022;

   3.  Defendant's Answer (described as a "Motion Order to Show Cause", but deemed by the Court to be an Answer [see PACER docket entry 10]);

   4.  This Court's June 22, 2022 Order deeming Defendant to be in default based on his abandonment of his defense and failure to respond to Court Orders;

   5.  A July 27, 2022 Clerk's Certificate of Default;

   6.  A photograph taken by the undersigned on April 24, 2022, depicting, among other items, the front window of the Premises and the trade name under which defendant, Youn Do Hwang individually, represented himself to the public at all times relevant to this case, including on December 1, 2020 (the date of the Perc spill in question);

   7.  An Acord certificate of insurance indicating that GSCA was an additional insured on a policy of insurance procured by Defendant Hwang for the Premises;

   8.  An April 13, 2021 letter from A.M. Trust stating that Defendant had failed to keep his insurance coverage for the Premises in force; and

   9.  A December 13, 2021 tender letter from the undersigned, on behalf of GSCA, to Defendant Hwang, demanding that Defendant Hwang assume the cost of remediation of the Perc spill and reimburse GSCA for its remediation expenses paid through that date.

**Procedural History:  Defendant's Default**

5. This action was commenced on December 20, 2021 with the filing of a summons and complaint. (PACER Doc. 1). A copy of the summons and complaint was served on defendant Youn Do Hwang individually, d/b/a "Debrich Cleaners" ("Defendant") on January 15, 2022 by personally serving Fun Hee, a person of suitable age and discretion, at Defendant's dwelling house, and by mailing a copy of the summons and complaint to Defendant in a postpaid wrapper from a post office or official depository under exclusive care and custody of the United States Postal Service within New York State on January 18, 2022 by regular first class mail in an envelope marked "Personal & Confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, and proof of service was therefore filed on January 28, 2022 (Doc. 6).

6. Defendant appeared by filing two copies of a document entitled "Motion Order to Show Cause" (Docs. 7 and 8) on February 17, 2022.

7. On February 17, 2022 District Judge Philip M. Halpern deemed defendant's "Motion Order to Show Cause" to be defendant's Answer (Doc. 10);

8. Defendant failed to appear at an April 25, 2022 Initial Pretrial Conference before Judge Halpern. Later on April 25, 2022 Judge Halpern issued an Order directing Defendant to show cause, on or before May 9, 2022, why he failed to appear at the Initial Pretrial Conference. The April 25, 2022 Order advised Defendant that "failure to comply with this Order may result in the issuance of a default judgment against him" (Doc. 14).

9. On June 22, 2022 Judge Halpern issued an Order (Doc. 18): (a) taking note of Defendant's failure to respond to the Court's April 25, 2022 Order, failure to serve initial discovery exchanges, and failure to respond to GSCA's interrogatories and document demands, (b)

permitting GSCA to move by Order to Show Cause for a default judgment against Defendant, and (c) directing GSCA to follow the procedures set forth in Attachment A to Judge Halpern's Individual Practices. Attachment A to Judge Halpern's Individual Practices states that before filing an Order to Show Cause seeking a default judgment, the moving party shall first obtain a Clerk's Certificate of Default.

10. On July 27, 2022 GSCA applied for, and the Clerk of Court issued, a Clerk's Certificate of Default against Defendant. (PACER Docs. 19-21)

11. Thus a default judgment is appropriate as against Defendant Hwang and in favor of Plaintiff GSCA.

### Defendant's Liability and GSCA'S Resulting Damages

12. The facts establishing Defendant Hwang's liability are pleaded in GSCA's Summons and Complaint, and by Hwang's default he is deemed to have conceded all well-pleaded factual allegations therein. These include admissions that:

- On December 1, 2020 Defendant's contractor spilled perchloroethylene (also known as tetrachloroethylene) ("Perc") within the premises leased by Defendant from GSCA (Weissman Ex. "1", ¶¶ 37-41);

- As a result of Defendant's Perc spill, GSCA has incurred necessary remediation costs and expenses, including the cost of the initial emergency response to the spill, and the cost of subsequent remedial measures to remove the contaminated subsoil, clean the air within the Premises, clean the interior of the Premises, and install an air cleansing system to prevent contamination of neighboring stores in the Shopping Center (Weissman Ex. "1", ¶¶ 42-50, 73-74);

- GSCA is continuing to incur necessary remedial costs and expenses (Weissman Ex. "1", ¶¶ 50, 74);

- As a result of Defendant's Perc spill, GSCA incurred attorney's fees (Weissman Ex. "1", ¶ 64);

- On December 13, 2021 GSCA demanded in writing that Defendant reimburse GSCA for the costs of the aforesaid remediation and assume the

- cost of remediation going forward, but Defendant has failed to do so (Weissman Ex. "1", ¶¶ 54-55);

- Because of the remediation necessary at the Premises, GSCA has been unable to re-let the Premises and has sustained a resulting loss of rental income (Weissman Ex. "1", ¶¶ 56-58);

- Defendant failed to keep insurance for the Premises in effect, in breach of the requirements of Defendant's Lease (Weissman Ex. "1", ¶¶ 51-52);

- GSCA has not been reimbursed by insurance for any of its damages, including its remediation expenses (Weissman Ex. "1", ¶ 53), and

- During Defendant's tenancy he failed to pay $136,516.85 in monthly fixed rent and in additional rent, in breach of the requirements of Defendant's Lease (Weissman Ex. "1", ¶¶ 59-63).

13. In addition, the affidavits of Thomas Tennyson, Henry Poyker and Samuel Jemal, and all of the exhibits annexed thereto, provide further support for the conclusion that Defendant Hwang is liable to GSCA under 42 U.S.C. § 9601, *et seq* ("CERCLA"), in breach of contract and in negligence. The law applicable to these facts is set forth in GSCA's accompanying Memorandum of Law, and GSCA respectfully directs the Court's attention thereto for an analysis of the legal issues underpinning Defendant Hwang's liability.

14. Furthermore, I have personal knowledge of facts pertaining to Defendant Hwang's failure to procure and maintain liability and property damage insurance coverage for the Premises. Specifically, § 52 of GSCA's Lease with Defendant provided that throughout Defendant's tenancy at the Premises Defendant was required to maintain commercial general liability insurance for the Premises, naming GSCA as an additional insured. (Jemal Ex. "1", Rider to Lease, Pg. 8, § 52)

15. In the process of representing GSCA in this matter, GSCA provided me with an Acord certificate of insurance stating that Defendant had obtained insurance with Wesco Insurance Company for the policy period October 25, 2019 to October 25, 2020. (See Weissman Ex. "7")

The Acord certificate of insurance further stated that GSCA was a named additional insured on the Wesco insurance policy.

16. GSCA informed me that the Wesco certificate of insurance was the most recent certificate of insurance provided by Defendant, and that Defendant had not provided GSCA with any evidence of insurance for the period October 25, 2020 onward. Therefore, with the expectation that Defendant had continued his insurance coverage with Wesco through the date of the incident, I submitted a claim letter to Wesco seeking coverage for the costs of remediating Defendant's Perc spill.

17. On April 6, 2021, in response to my above-referenced claim letter, Stacey Games, a claimsperson with A.M. Trust North America ("A.M. Trust") called me and informed me that A.M. Trust was the claims management company for Wesco Insurance Company and that they had been assigned to respond to GSCA's claim. Ms. Games further informed me that A.M. Trust intended to deny GSCA's claim because Defendant's insurance policy was cancelled effective February 10, 2020 due to Defendant's non-payment of premiums. Ms. Games further informed me that they had no record of any insurance coverage for the Premises after the date of cancellation.

18. Subsequently, I received a denial letter from A.M. Trust dated April 13, 2021. (Weissman Exhibit "8") A.M. Trust's denial letter stated in relevant part:

> [GSCA] would qualify as an insured with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to Debrich…
>
> [However], [t]he policy provides coverage for claims for "bodily injury" or "property damage" caused by an accident or "occurrence" or for "personal and advertising injury" to which this insurance applies that occurs during the policy period. The Debrich policy was in effect from November 19, 2019 to February 10, 2020, when the policy was cancelled. No coverage is available under the policy for

> any injuries or damages which occurred outside the effective dates of the policy as set forth in the above-cited provisions.

(Weissman Ex. "8", Pg. 3, Final Par. and Pg. 6, Final Full Par.)

### **GSCA's Tender of Remediation Costs and Defendant Hwang's Failure to Respond**

19. On December 13, 2021 I sent a letter ("the Tender Letter") to Defendant by certified mail, return receipt requested and by first class U.S. mail, demanding pursuant to 42 U.S.C. § 9607(a), *et seq.* ("CERCLA") that Defendant immediately pay GSCA's remediation costs through the date of the letter ($96,011.36) and that Defendant assume responsibility for payment of all Perc remediation expenses for the Premises, and for the Shopping Center as a whole (including neighboring commercial properties that were impacted by Defendant's Perc spill), going forward. On December 20, 2021 I received the return receipt that had been annexed to the Tender Letter. The return receipt had been signed by the recipient, confirming that the Tender Letter had been delivered to Defendant. United States Postal Service records show that the Tender Letter was delivered to Defendant on December 16, 2021. Copies of the Tender Letter, the signed return receipt and the USPS proof of delivery are jointly annexed to this Declaration as Exhibit "9".

20. Defendant Hwang did not respond to GSCA's tender letter, has not reimbursed GSCA for its remediation expenses and has not assumed the responsibility and expense of continuing the remediation work at the Premises.

21. As explained in the accompanying Memorandum of Law, pursuant to 42 U.S.C. § 9607(a), an assessment of pre-judgment interest for CERCLA response costs is mandatory and, in this case, runs from the date of the December 13, 2021 letter forward. As shown in the chart annexed as Exhibit "8" to Samuel Jemal's Declaration, this interest (applied to the sum demanded in the December 13, 2021 letter) comes to $72.01.

**Attorney's Fees**

22.     In connection with GSCA's application for attorney's fees pursuant to the terms of the Lease and pursuant to CERCLA, my firm's invoices through July 31, 2022 for work performed in connection with the Perc spill total $29,372.50. These invoices have been paid in full by GSCA.

23.     Of course, further invoices will be generated for work performed in the month of August 2022 and September 2022 in connection with this Order to Show Cause, and for such work as may be necessary going forward to serve the Order to Show Cause and to take such actions as may be necessary going forward.

24.     Should the Court award GSCA attorney's fees, and should the Court deem further briefing necessary as to this issue, the undersigned can submit itemized invoices regarding the precise services undertaken by my firm in representing GSCA in connection with the Perc spill through the date of any Order that the Court may issue.

**An Inquest As To Damages Is Unnecessary**

25.     Although a court may conduct a hearing on the issue of damages in connection with a default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, it is not required to do so. *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.,* 699 F.3d 230, 234 (2d Cir.2012) Rather, the court may issue a judgment for damages so long as there is an evidentiary basis for the damages sought. *Id.* Further, the court may determine there is sufficient evidence based upon affidavits and documentary evidence. *Id.*

26.     Here, GSCA respectfully submits that the Declaration of Samuel Jemal (a member of GSCA) and the exhibits annexed thereto, including paid invoices, an estimate for future remediation work, a sworn statement as to the items of unpaid rent and additional rent, a sworn

statement as to attorney's fees paid, and a chart illustrating the calculation of pre-judgment interest on the unpaid items of rent and additional rent, sufficiently establish the following items of damages have been proved and are appropriate for inclusion in a default judgment:

(1) Remediation expenses paid to Emergi-Clean and CA Rich totaling $179,211.36 (Jemal Decl., ¶¶ 8, 11, 13; Jemal Exs. "5" and "6");

(2) Anticipated future remediation expenses paid to CA Rich of at least $31,119 (Jemal Decl.¶¶ 12-13; Jemal Ex. "7");

(3) CERCLA mandatory statutory interest of $72.01 based on the 0.1% annual interest set forth at https://www.epa.gov/superfundlsuperfund-interest-rates for interest on remediation expenses, running from December 13, 2021, the date of GSCA's demand that Defendant assume the cost of remediation and reimburse GSCA for the remediation expenses paid as oft hat date: $72.01 (see calculation at bottom of Jemal Ex. "8");

(4) Unpaid rent and additional rent totaling $136,516.85 (Jemal Decl., ¶ 14);

(5) Interest of $115,989.03 on the aforesaid items of unpaid rent and additional rent (Jemal Decl., ¶ 15; Jemal Ex. "8");

(6) Loss of rental income in the amount of at least $64,608 for the period September 1, 2021 through August 31, 2022 (Jemal Decl., ¶ 16; Jemal Ex. "4", Pg. 1, Listing for August 2021 monthly rent)

(7) Loss of common area maintenance fees totaling $15,513.96 for the period September 1, 2021 through August 31, 2022 (Jemal Decl., ¶ 17);

(8) Attorney's fees of $29,372.50 through July 31, 2022 and continuing (Jemal Decl., ¶20); and

(9) A $402 filing fee for commencement of this case (Jemal Decl, ¶ 22(i)).

27. In total, after application of Defendant's $8,000 security deposit, these items total $564,804.71 (Jemal Decl., ¶ 22) and GSCA respectfully submits that a default judgment in said amount is appropriate without the need for an inquest.

Dated:  Elmsford, New York
        September 9, 2022

                        Saretsky Katz & Dranoff, L.L.P.
                        Attorneys for Plaintiff
                        Greenburgh Shopping Center Associates, LLC

By: _____
                 Robert B. Weissman

565 Taxter Road, Suite 210
Elmsford, New York 10523
(212) 973-9797